Yes, good morning Your Honor and before I proceed it is my intention to reserve the balance of my time for rebuttal in terms of assisting the court with pronouncing my client's name. It's Abraham Gebregziabher-Tekle. Okay. Okay. Thank you. Thank you. Commencing on page 14, line 2 of the government's brief, DHS focuses on my client Abraham Tekle's initial false testimony regarding his prior travel to Japan. Because Mr. Tekle's integrity is important, this false impression needs to be rectified. Like his namesake, the patriarch Abraham, my client, modern-day Abraham, told a lie in order to save his life. The Abraham of Philistine King of Gerar. He admitted to lying, right? He testified that he had in fact been traveling. He first said he hadn't traveled to Japan and then he changed his testimony and said yes he had been in Japan and the reason he gave was he didn't want to be sent back to Japan. Is that all correct? Correct, Your Honor. Okay. You're saying he had good reasons to lie to the immigration officer but the there was a lie to the officer. If I may, thank you. I'll explain. The Abraham of old told the Philistine King of Gerar that his wife Sarah was actually his sister. Both the Abraham of old and my client, modern-day Abraham, were in a foreign land and in fear for their respective lives. The Abraham of old misjudged the king who would not have killed Abraham in order to take Sarah as the king's wife. We know this because the king did not harm Abraham upon learning the truth nor did he harm Abraham because he had not been truthful. While the king was displeased that the lie would have led him to make a serious mistake about Sarah, the king understood that to save a life was tantamount to saving the whole world. The king knew that a dead patriarch is of no use to his old family. So why did my client, modern-day Abraham, lie about Japan? He mistakenly thought that if he told the immigration judge about Japan she would deport him there and in turn the Japanese government would ultimately deport him to his homeland Ethiopia where he would then be murdered and I cite to the administrative record at page 904 lines 24 to 25. Was the Japanese business the only false evidence submitted by Mr. Abraham? Correct your honor I had planned on delving into that in rebuttal so hence we would respectfully submit that a lie to save a life is a not a moral evil and on that I found other inconsistencies correct. Excuse me? The IJ identified other inconsistencies. According to the IJ which I intend to speak to on other things the IJ credited the testimony of the government witness that the warrant was fraudulent. And again on rebuttal I plan on. No no you'd better say it right now. I'll say it right now. Okay specifically as to the warrant that I believe appears at AR 2141 initially I believe that the forensic expert should not have been allowed to testify and the reasons for that are set forth ad nauseum in my exemplars no alternative method identified vague references to documents on file which city administrator was she talking about most importantly there was no foundation that only laser jet printers were used and that no jet printers were used contemporaneously. In the U.S. here we're familiar with the courts changing forms all the time from year to year this does not mean that the prior form is no longer genuine and on the other hand I'd like to balance what I just said against Abraham's wife a scholar's detailed testimony as to her having been served with the warrant on December 7th 2005 and Abraham's detailed testimony regarding his promptly fleeing from Ethiopia later that same day. But all that's hinged upon whether or not it's a valid warrant I mean if there was no such warrant both of them are lying. Well we maintain it was a valid warrant and that their conduct. I understand that but unless we're prepared to say that there was improper fact-finding with respect to the warrant we have to live with the warrant didn't exist. Okay thanks and so I'd like to reserve the balance. Why don't we hear from the government, I know you've got a little over four minutes. Good morning your honors may it please the court attorney Sabatino F Leo on behalf of the Attorney General of the United States. It is clear from the record that the evidence does not compel a conclusion contrary to that of the agency that petitioner the male petitioner in this particular case testified adversely incredibly in front of the immigration judge in the agency and not only that but relied on what is a purportedly false arrest warrant which really is the crux of petitioners asylum claim before the agency. One of the important things to recognize here is this is a situation in petitioner testified vehemently that he resided continuously in Ethiopia for a period from 1998 to 2005 and that when confronted specifically with regard to whether or not he traveled to Japan whether or not he applied for a visa in Japan whether or not he worked in Japan that he denied that and only when confronted with uncontroverted evidence that he was in fact in Japan for specific periods of time the petitioner then indicate that he was in Japan and then he further expounded upon his inconsistencies before the agency when he indicated that he was only in Japan from the period of 1998 to 1999 and from that based upon the evidence provided to provided by the government before the agency in this particular case that his wife indicated very clearly in a visa application in Japan that he was living and residing in 2005 so the the the in essence the adverse credibility nature the inconsistencies before the agency simply continue to pile up on behalf of the petitioner and this is a situation in which is this is a post real ID case we have a situation in which this asylum application was filed in 2006 after enactment of the Real ID Act and as a result of that the immigration judge has the ability and the broad ability I dare I say with regard to making a determination based upon a totality of the circumstances that it need not be these inconsistencies need not go to the heart of the claim with regard to with regard to pre real ID cases but since this is a post real ID case we have a totality of the circumstances with regard to incredulous testimony before the immigration judge and I want to add also that it's also important to recognize that petitioner not only lied with regard to being in Japan omitting that he applied for a tourist visa in Japan omitting where there was also the case with regard that he was challenged with respect to whether or not his passport had expired he initially indicated it expired in 2000 when presented with evidence to the contrary he then admitted that it expired in 2001 and initially he had testified that it expired in 2000 he's unable to renew it and then subsequent testimony indicates that it expired in 2001 and that with assistance from his friends he was able to renew same the decision regarding the wife by Scully I think her name is so so the IJ thought that she also made some adverse credibility determinations but because of the female genital mutilation she has a well-founded fear of future persecution but then denied her asylum as a matter of discretion so what's our standard for considering or reviewing the IJs determination on that okay yes your honor and and it in essence it's a bifurcated decision by the immigration judge the immigration made a determination that for purposes of asylum with regard to political opinion or ethnicity based upon the adverse credibility nature of your testimony ie the fraudulent arrest warrant and perpetrating that testimony upon the court that I'm going to deny saying with regard to that withholding he made the determination there was a clear probability right they say that it's higher more likely than not a clear probability with regard to female genital mutilation because this court has consistently held in Mohammed versus Gonzalez and the like that that is continuing persecution what the regs do under ACFR 1208.16 it indicates that if you're in asylum determination was originally denied as and you subsequently grant withholding that you are bound as the agency to go back and reconsider that determination and what the immigration judge did in this particular case is when reassessing that determination what the immigration judge is with regard to the adverse factors as well as reunification factors that are set for release reunification that term is set forth in the regulation made a essence of fraud perpetrated upon the immigration court that your asylum application is going to be denied as a matter of discretion so I think what the immigration judge did here and this is a very uncommon circumstance I admit that before this honorable court at this particular time this is a very the argument is the withholding standard is higher is more strict than the asylum standard as a result if you get withholding you should ergo get asylum however the regulations actually provide for this situation I have actually accounted for it after notice and comment period obviously and have said in the event withholding is granted and asylum was denied you as the agency have to go back and reassess that asylum determination and and surprisingly I will say that the immigration judge did a fantastic job here and actually citing to the regulation and looking and making that determination here the adverse factors the adverse factors here are even when confronted with conflicting and inconsistent testimony before this honor before this court meaning me the immigration court she the the female petitioner can sit continue to mislead the court continue to be inconsistent and as a result I am going to deny your asylum petition as a matter of discretion however faced with the uncontroverted really testimony with regard to the female genital mutilation I will grant you withholding so she was granted withholding as a result of that evidence but under the regular under the regulation within the power of the agency the agency was able at that particular time to make the determination again we're talking about adverse credibility we're not hooking ourselves back up into a post real ID analysis and it really is a totality of the circumstance circumstances analysis you have this uncontroverted FGM testimony and the immigration says hey that's uncontroverted I understand that and that under this court's case law has consistently been held to be continuing persecution and I don't I am do not sit before this court and say for some reason that that is not what I do say is based upon the totality of the circumstances the immigration judge made that adverse credibility determination and then as a result denied asylum as a matter of discretion it would be for purposes of the discretionary denial of the asylum claim would be an abuse of discretion ie is it manifestly contrary to law I argue that it is not based upon the real ID standard is it arbitrary capricious again based upon the real ID standard and the facts that have been submitted before this court so abuse of discretion manifestly contrary to law with regard to that discretionary denial that was within so your argument basically is that it's not an abuse of discretion for the IJ to have denied asylum to the wife on the ground that the wife participated in the presentation of false evidence when the consequence of granting asylum would then be to allow or at least force consideration of family reunity unity which would then produce asylum for the principal for the husband who was the centerpiece of the false evidence oh I get it okay okay and exactly that with regard to this particular situation so I would I would I would I would submit to this court that again does do we compel a contrary conclusion does substantial evidence with respect to the adverse credibility determination support that adverse credibility finding on behalf of the male petitioner I say unequivocally and then if we move secondarily if we move to the IJ's decision to deny asylum on the basis of discretion for all the factors that we've discussed based upon that totality of the circumstance it's clearly is not an abuse of discretion it's clearly not manifestly contrary to law so I so I indulge this court to deny the petition for review and if there are any further questions for this court I will entertain them of course thank you thank you your honor's thank you if I may some preliminary housekeeping housekeeping issues on the issue of my clients location in July 2005 all one has to do is look at the government's exhibits 811 through 14 to see that when the wife applied for a visitor visa to the US in 2002 she set forth at the location of her husband was in Japan she was denied in 2003 four and five and you look at the 2005 application and there's no indication of that whatsoever so I'm humbly submit that that's either error clerical error on the part of them DHS or simply a red herring the wife did not participate in any miss testimony well except for and we've talked about this before depending on how one characterizes the warrant again and and I stand on my prior arguments on that on renewed it in 1998 two-year renewal at the time there was a war was going on and there was no renewal after the expiration in September 2000 and we submitted that passport the original copies of our exhibits thereafter he did Ethiopia for Kenya by ground transportation and by his testimony in Kenya somebody had doctored his expired passport so that he could then travel to Japan so there was no inconsistency there in terms of the real idea I agree that assessing credibility is important but it's also important not to lose sight of the fact that that rose out of the horrific events of 9-11 and its main purpose is to protect us from allowing terrorists into our country and nobody here in good conscience would submit that my clients are terrorists now on the important issue of my client a scholar and the children's independent application for asylum initially based on ethnicity and imputed political opinion as well well before she met her husband my client was in jail in the mid-eighties because of political opinion but moreover the court properly recognized based on medical evidence that my client was at a young age subjected to the horrific practice of female genital mutilation under the Mohammed versus Gonzalez case in the matter of Kissinger you know this is a condition the judge did not hide her reasoning whatsoever as to only grant a scholar the higher standard of proof that withholding requires and not the lower standard asylum to which she was entitled one just has to take a look at page 20 of her order dated July 13 and see that the court's animus right or husband but we respectfully submit that it's not correct for the judge to deny the wife her asylum where she endured such extreme persecution solely to punish the husband and therefore break up the family on the issue of the children they're here under DACA and as we all know that's a tenuous position from administration to administration and so the judge thought wrong I believe that they were somehow safe and secure here and again we may be putting the cart before the horse the judge assumes that if you grant the wife asylum she's going to file the derivative petitions for the husband and the children she may but at that point the service is not precluded from then examining that and whether they whether or not the service wants to grant that based on what happened in court of this if the service continues to believe that thank you your honor thank you very much thank both sides for their arguments just use the second part of the name tech liver secessions now submitted for decision thank both think both sides
judges: W. Fletcher, Ikuta, Freudenthal